IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

WENDELL CRUSE,

       Plaintiff,

v.                                 Case No. 3:15-cv-02282

MELISSA ROMANS, Fiscal Manager,
Western Regional Jail;
JANE STEPP, Counselor, Western Regional Jail;
JOHN CRAWFORD, Administrator,
Western Regional Jail,

       Defendants.

PROPOSED FINDINGS AND RECOMMENDATIONS

On February 26, 2015, Plaintiff Wendell Cruse ("Cruse") filed a *pro se* Complaint under 42 U.S.C. § 1983, (ECF No. 1), alleging violations of his constitutional rights guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Pending before the Court are (1) Defendants' Motion for Summary Judgment, (ECF No. 47); (2) Plaintiff's Motion to Amend the Complaint, (ECF No. 50); and (3) Plaintiff's Motion to Extend Time to Conduct Discovery, (ECF No. 52). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, the undersigned **DENIES** Plaintiff's Motion to Extend Discovery and **RECOMMENDS** that Plaintiff's Motion to Amend the Complaint be **DENIED**; Defendants' Motion for Summary Judgment be **GRANTED**;

and this action be **DISMISSED**, with prejudice, and removed from the docket of the Court.

## I.    Relevant History

In February 2015, Cruse was a pretrial detainee at the Western Regional Jail ("WRJ") in Barboursville, West Virginia. According to Cruse's original complaint, he was booked into the WRJ on two occasions—once on January 3, 2015 and once on February 22, 2015—and both times the WRJ's Fiscal Manager took all of the funds deposited into his inmate account to pay administrative costs. (ECF No. 1). Cruse complained that his funds were seized without notice and without the opportunity for redress.

On March 27, 2015, before any action was taken on his complaint, Cruse filed a motion to amend the complaint and proposed amended complaint. (ECF No. 5). In the amended complaint, Cruse requested that Melissa Romans be substituted as the defendant, because she was the WRJ's Fiscal Manager at all relevant times. (ECF No. 5-1 at 1). Cruse also asked that Ms. Jane Stepp and Mr. John Crawford be added as defendants. Cruse alleged that these defendants denied his request for indigent legal mail supplies, although he had a looming court deadline, and wrongfully denied his access to the WRJ's law library. (*Id*. at 2-3). Cruse further asserted that he was not given enough time in the law library at the WRJ. Finally, Cruse contended the law library and pro se litigant policies at the WRJ were so woefully inadequate they constituted a denial of access to the courts. (*Id*.). For relief, Cruse demanded "a ruling that the confiscation of Plaintiff's funds without notice and opportunity for redress is a violation of the Due Process Clause"; "a ruling that the denial of [the] law library, refusal to mail legal motions, failure to provide legal services for a pro se litigant and failure to provide an adequate law library and pro se policies is [sic] a violation of the Sixth Amendment to

the United States Constitution"; an order requiring the defendants to provide notice and due process before withdrawing funds from inmate accounts; and an order requiring the defendants to provide published rules for the law library and *pro se* litigants, to provide adequate legal supplies, and to provide access to copies of case law for indigent inmates. (*Id.* at 4-5).

On June 29, 2015, Cruse filed a motion for leave to file a second amended complaint. (ECF No. 14). The second amended complaint incorporated the first two complaints and then essentially restated Cruse's claim regarding the confiscation of funds from his inmate account. (*Id.*). The following day, the undersigned granted Cruse's applications to proceed without prepayment of fees and costs and his motions to amend the complaint and ordered the U.S. Marshals Service to serve all three complaints on the defendants. (ECF No. 15). Later that same day, Cruse filed another amended complaint, which restated all of the allegations set forth in the first three complaints and clarified that he was suing the defendants in their "professional and personal capacities." (ECF No. 16).

On December 2, 2015, after all of the defendants had been served and responded to the complaints, the undersigned held a status conference and entered a scheduling order. (ECF Nos. 37, 38). By this time, Cruse had been released from custody and appeared in person at the conference. After discussion with the parties, a discovery deadline of May 31, 2016 was set, and the parties were ordered to file dispositive motions no later than June 12, 2016. (ECF No. 37). The parties engaged in discovery, and on June 8, 2016, Defendants filed the instant Motion for Summary Judgment. (ECF No. 47). The following day, the court issued a notice pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), advising Cruse of his obligation as a *pro se* litigant to respond to

Defendants' Motion for Summary Judgment. (ECF No. 49). Cruse was given thirty days to respond and was warned that a failure to respond might result in a recommendation of dismissal. *(Id.)*

Cruse did not respond to the motion; however, on June 10, 2016, he filed his third motion to amend the complaint and a motion to extend discovery. (ECF Nos. 50, 52). Defendants filed responses in opposition to the motions. (ECF Nos. 54, 55). On November 14, 2016, the undersigned ordered a hearing on the motions to take place on November 28, 2016. (ECF No. 56). Although the docket sheet indicates that the order was delivered to Cruse at the address on file, Cruse failed to appear at the motions hearing. (ECF No. 57). On December 7, 2016, Cruse filed a notice of change of address. (ECF No. 58). To date, Cruse has not responded to the motion for summary judgment, nor filed a reply to Defendants' memoranda in opposition to his motion to extend discovery and motion to amend.

## II.   Discussion

### A.  Motion to Extend Discovery

Cruse filed a motion to extend discovery, arguing that Defendants had failed to supply all correspondence between Cruse and the Defendants contained on the WRJ's email system. In addition, Cruse claims that Defendants' counsel agreed to provide Cruse with a copy of his deposition transcript, but had failed to do so. According to Cruse, without these materials, he was unable to compile interrogatories and requests for admission. (ECF Nos. 51, 52).

At the status conference held on November 28, 2016, Defendants' counsel confirmed that all documents requested by Cruse had been provided to him. Counsel indicated that he had not agreed to send Cruse a copy of the deposition transcript;

instead, he merely stated that Cruse would receive a copy if he wished to read and sign it. Cruse was not present at the status conference to dispute the Defendants' representations, although the order setting the hearing was sent to Cruse's last known address and was not returned as undeliverable.

Considering that Cruse received all of the requested documents, the motion is **DENIED.** Moreover, Cruse's contention that he was prevented from preparing written discovery due to Defendants' failure to produce the requested documents is unpersuasive. Cruse was a party to the correspondence he requested and provided the testimony contained in his deposition transcript. Accordingly, Cruse already knew all of the information necessary to draft discovery requests.

### B. Motion to Amend

Cruse's third motion to amend seeks to add a claim for money damages based upon his prior allegation that he was denied indigent legal supplies in March 2015. (ECF No. 50-1). In the third amended complaint, Cruse states that when Defendants refused to provide him with free envelopes and stamps, he was unable to timely file a response to an eviction notice he received while incarcerated. (*Id.*). On March 27, 2015, Cruse appeared for eviction proceedings before a Cabell County Magistrate and was informed that his failure to respond to the eviction notice resulted in a waiver of his right to a trial by jury. Cruse alleges that despite being up-to-date on his rental payments, the Magistrate evicted him, and he was forced to move within ten days. Cruse now seeks $25,000 from each defendant, as well as punitive damages. (*Id.*).

In opposition to the motion to amend, Defendants argue that the proposed amendment should be denied as untimely. (ECF No. 54). Defendants point out that Cruse raised the issue of a damages claim related to his eviction at the initial status

conference on December 2, 2015, and he was instructed by the Court to supply evidence of his eviction and the attendant damages no later than December 22, 2015. Cruse failed to comply with the Order. Indeed, Cruse's June 10, 2016 motion to amend the complaint, filed after the close of discovery, was the first effort he made to pursue the claim. Defendants assert that Cruse effectively abandoned the claim when he failed to comply with the scheduling order and should not be permitted to resurrect it at this late date.

Fed. R. Civ. P. 15 governs the amendment of pleadings in civil actions. Rule 15(a) applies to amendments made prior to trial and provides that "[a] party may amend its pleading once as a matter of course" within twenty-one days of filing it, or if the pleading is one to which a responsive pleading is required, "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. ... In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P 15(a)(1).

Here, Cruse amended his complaint three times before it was served on the defendants. The final version of the complaint included a claim related to booking fees and a claim related to alleged denial of access to the court. In support of the second claim, Cruse alleged that he was precluded from timely responding to an eviction action because he was denied library time and mailing supplies. In addition, the poor condition of the WRJ's law library and the Jail's pro se litigant policies created barriers too difficult to overcome. On December 2, 2015, the undersigned conducted a status conference at which Cruse was questioned about his claims. When asked what injury he sustained in connection with his alleged denial of access to courts, Cruse stated that he lost the eviction action and was forced to move. Cruse did not allege a specific financial loss at

that time, nor did he request money damages as part of his lawsuit.

Nonetheless, to initiate discovery, the court ordered both parties to disclose to the other party certain relevant information. (ECF No. 37). In Cruse's case, he was ordered to provide Defendants with the proof of injury related to his claim of denial of access to courts. In particular, he was instructed to provide to Defendants no later than December 22, 2015 any evidence connected to the eviction proceeding. Defendants complied with the court's order and supplied Cruse with their information; however, Cruse did not reciprocate. Notably, Defendants assert, and Cruse does not dispute, that he did not provide any evidence of injury related to the eviction proceeding.

Although leave to amend a complaint should be freely given when justice so requires, "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assoc.,* 602 F.3d 597, 603 (4th Cir. 2010). Allowing Cruse to amend the complaint for the fourth time to add a claim for money damages—after expiration of the discovery deadline and after Defendants have moved for summary judgment on the basis of mootness—would clearly be prejudicial to Defendants. Cruse had ample opportunity to assert a claim for compensatory and punitive damages before expiration of the discovery deadline; in fact, he was ordered to supply the evidence underlying that particular claim months ago. Cruse's motion to amend sets forth no grounds in support of the motion and provides no explanation for why he waited so long before asserting a claim for money damages. None of the allegations contained in the proposed amended complaint contain new information, or information that was not available to Cruse in December 2015. Accordingly, Cruse's motion to amend should be **DENIED**.

7

In addition, the motion to amend should be denied, because the proposed amendment would be futile. As more fully explained *infra,* Cruse fails to state a constitutional claim for denial of access to courts. Given that the amendment merely expounds on that existing claim and seeks monetary compensation for a violation that cannot be sustained, justice would not be served by allowing the amendment.

### C. Motion for Summary Judgment

Summary judgment is proper under Fed. R. Civ. P. 56 when no genuine issue of material fact is in dispute, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," and a disputed issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. The party moving for summary judgment bears the burden of showing "an absence of evidence that demonstrates the existence of a genuine issue of fact for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256. Concrete evidence includes "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must not resolve disputed facts nor weigh the evidence. *Russell v. Microdyne Corp.,* 65 F.3d 1229, 1239 (4th Cir. 1995). Instead, the court must accept as true the factual version of the nonmoving party and review the evidence "draw[ing] all justifiable inferences" in its favor. *Masson v. New Yorker Magazine, Inc.,* 501 U.S.

496, 520 (1991).

Nonetheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson,* 477 U.S. at 252. While any permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson*, 477 U.S. at 249-50).

### 1. *Mootness*

In their motion for summary judgment, Defendants argue that Cruse's complaint should be dismissed as moot. Defendants indicate that Cruse was released from custody on September 30, 2015 and is not expected to return to the WRJ. As Cruse seeks only injunctive relief, Defendants contend that his release from custody has mooted his claims.[1] In support of their motion, Defendants attach portions of Cruse's deposition testimony in which he confirms that he wants no money from the Defendants, instead he wants them to revise their policies to conform to constitutional standards. (ECF No. 47-3 at 6). Cruse has not responded to the summary judgment motion; thus, he has failed to demonstrate a genuine issue of material fact that would preclude entry of summary judgment.

"To be justiciable under Article III of the Constitution, a conflict between litigants

---

[1] Cruse did ask for attorneys' fees in his amended complaint. However, no attorney is involved in the case on behalf of Cruse. Therefore, as attorneys' fees cannot be awarded, Cruse's request for attorney's fee does not constitute a claim for money damages.

must present a 'case or controversy' both at the time the action is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed,* 719 F.2d. 689, 693-94 (4th Cir. 1983); *see also Arizonans for Official English v. Arizona,* 520 U.S. 43, 68 (1997) ("The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence") (citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 (1969).

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse,* 569 F.3d 182, 186 (4th Cir. 2009). "The reasons for finding mootness in such a context are clear.  Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007). "Any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted." *Incumaa*, 507 F.3d at 287.

Nevertheless, a plaintiff's claim should not be dismissed as moot if there is sufficient evidence to conclude that the action is "capable of repetition, yet evading review." *Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515 (1911). Under this exception, a claim that would otherwise be moot may be subject to judicial review if the facts of the case lead to a reasonable expectation that the "same complaining party would

10

be subjected to the same action again." *Lane v. Williams,* 455 U.S. 624, 634 (1982) (citing *Weinstein v. Bradford,* 423 U.S. 147, 149 (1975)); *Federal Election Commission v. Wis. Right to Life*, 551 U.S. 449 (2007) ("capable of repetition" exception requires demonstrated probability that the same controversy will recur involving the same plaintiff).  The plaintiff must make a reasonable showing "that he will again be subject to the alleged illegality." Mere conjecture that the plaintiff may return to a prison facility and again face the alleged wrong is not sufficient to meet the mootness exception. *Higgason v. Farley,* 83 F.3d 807, 810 (7th Cir. 1996).

Cruse is no longer in the custody of the WRJ and there is no reason to believe that he will again be subject to the same alleged wrong. Accordingly, the undersigned **FINDS** that Cruse's complaint is moot. *See Slade v. Hampton Roads Reg'l Jail,* 407 F.3d 243, 249 (4th Cir. 2005) (holding that a pretrial detainee met the first prong of the mootness exception in that the duration of his detention was too short to fully litigate his claim; however, the detainee could not satisfy the second prong, because of the presumption that he would follow the law when released). In addition, as explained below, Cruse's complaint substantively is without merit and should be dismissed.

### 2.  *Booking Fees Without Pre-deprivation Procedure*

With respect to Cruse's due process claim concerning the WRJ's booking fees, courts in a number of circuits have already addressed and rejected similar claims. *See, e.g., Slade,* 407 F.3d at 253; *Mickelson v. Cty. of Ramsey*, No. 13-CV-2911 SRN/FLN, 2014 WL 4232284, at *5–6 (D. Minn. Aug. 26, 2014), *aff'd,* 823 F.3d 918 (8th Cir. 2016) (recognizing that the majority of courts find the collection of nominal fees for booking, room and board, and bond, without a pre-deprivation hearing, does not violate due process); *Sickles v. Campbell Cnty., Ky.,* 501 F.3d 726 (6th Cir. 2007) (finding that the

withholding of an inmate's funds to cover the costs of booking and room and board, without a pre-deprivation hearing, did not violate due process); *Tillman v. Lebanon Cnty. Corr. Facility,* 221 F.3d 410 (3d Cir.2000) (holding that the collection of a small daily housing fee, without a pre-deprivation hearing but with post-deprivation remedies, satisfied due process); *Cole v. Warren Cnty., Ky.,* No. 1:11–DV–00189–JHM, 2012 WL 1950419, at *6 (W.D.Ky. May 30, 2012) (finding a jail's assessment of booking, housing, and bond fees without a pre-deprivation process did not violate of due process). Cruse does not contend that the WRJ's booking fees violate due process; rather, he argues that the WRJ's practice of collecting fees "without notice or opportunity for redress" is unconstitutional. (ECF No. 17). When considering a procedural due process claim, the court must answer two questions: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State, and the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Slade,* 407 F.3d at 253 (quoting *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)). To answer these questions, the court must consider three factors: "(1) the private interest to be affected by the action; (2) the risk of erroneous deprivation of that interest through procedures that were used and the probable value of added procedures; and the government's interest, including the fiscal and administrative burdens of added procedures." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

In *Slade*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") considered a one-dollar-per-day housing charge by a regional jail in Virginia, which was assessed to every inmate without a pre-deprivation hearing. Looking at the three factors, the Fourth Circuit concluded that while the inmates had a property

12

interest in the one dollar per day, the interest was limited because the inmates had to be brought to trial within five months under Virginia law. The jail, on the other hand, had a legitimate interest in collecting the fees to defray the costs of housing the inmates. There was little risk of "an erroneous deprivation that a pre-deprivation hearing would ameliorate," because the deduction was a ministerial matter "with no discretion and minimal risk of error." Slade, 407 F.3d at 253 (citations omitted). Moreover, to "require pre-deprivation proceedings for what are essentially ministerial matters would significantly increase transaction costs and essentially frustrate an important purpose of the program, which is to reduce the [Jail's] costs of incarcerating prisoners." *Id.* at 254 (quoting *Tillman v. Lebanon County Correctional Facility,* 221 F.3d 410, 422 (3d Cir. 2000). Consequently, the Fourth Circuit found that pre-deprivation proceedings were not required to comply with the principle of procedural due process.

In this case, Cruse was charged a thirty-dollar processing fee on five occasions to cover five bookings. The WRJ assesses every inmate a jail processing fee at the time of admission or booking. The fee is assessed in conformity with the applicable West Virginia statute and the policy of the West Virginia Regional Jail and Correctional Facility Authority ("WVRJCFA"). The WVRJCFA's policy provides, in relevant part, the following:

> Policy No. 17001-A:  In accordance with Article 20, Chapter 31, Section 30 of the code of West Virginia, a person committed to be housed in jail shall, at the time of admission/booking ... pay a processing fee of thirty ($30.00). ... Each time an inmate is booked/admitted into a regional jail the thirty dollar ($30.00) processing fee shall be imposed. ... If the person is unable to pay at the time of booking, the fee shall be deducted from his/her income, at a rate of fifty percent until the jail processing fee is paid in full. ... At the time of admission, the inmate shall be informed of their financial obligation as well as their entitlement to a refund of the processing fee upon acquittal or dismissal of all charges.

(ECF No. 47-2 at 2). The policy includes instructions on how the jail processing fee should be collected at booking, stating, *inter alia*:

> Upon admission to the facility, the booking officer shall inform the confined person of the Jail Processing Fee of thirty dollars ($30.00) ... The booking officer will have completed the attached Jail Processing Fee Notification Form. The original will be retained by the jail and a copy will go to the offender. ... Any person who has paid the Jail Processing Fee in full, or in part, is entitled to a refund of the Jail Processing Fee paid as a result of an acquittal or dismissal of all criminal charges.

(*Id.* at 4-5). Cruse has produced no evidence to suggest that the WRJ deviated from the WVRJCFA's policy in assessing and collecting his jail processing fees.

Clearly, the policy and procedure followed by the WRJ satisfies procedural due process. As many courts have determined, prisoners have a property interest even in a nominal fee, such as the thirty dollars collected in this case. Nevertheless, when the fee is statutorily authorized and assessed without discretion, the prisoner is not entitled to a pre-deprivation hearing. *See Maness v. Ozmint,* No. C.A. 8:05-783-HMH-BHH, 2006 WL 686477, at *3 (D.S.C. Mar. 14, 2006). Furthermore, any concern that an erroneous deprivation can occur is remedied by the WRJ's post-deprivation procedure, which provides a mechanism for reimbursement of fees collected when criminal charges are dismissed or the prisoner is acquitted. *See Mickleson,* 2014 WL 4232284, at *7.

For the foregoing reasons, the undersigned **FINDS** that Cruse fails to state a meritorious due process claim.

### 3. *Inadequate Law Library, Supplies, and Indigent Legal Policies*

Cruse complains that the law library at the WRJ is inadequate in that it has a twenty-year old typewriter with no supplies for it; one computer with Lexis, but no operating instructions; barely enough space to accommodate one person; no ability to copy case law; and no legal supplies or assistance. Cruse asks the Court to find that the

WRJ's inadequate law library and *pro se* policies, lack of supplies, and refusal to provide *pro se* litigants with legal services violate the inmates' constitutional rights by impeding their access to the courts. Cruse adds that the WRJ's policy requiring inmates to submit their attorneys' telephone numbers and wait for them to be added to the inmates' phone lists also "operates as a denial of access to courts." (ECF No. 16 at 3-4).

In *Bounds v. Smith*, 430 U.S. 817, 821 (1977), the United States Supreme Court held that prisoners have a constitutional right to meaningfully access the courts. To satisfy that right, States have an obligation to provide adequate law libraries, or assistance from individuals trained in the law. *Id.* at 828. However, the obligation is not all-encompassing and certainly does not "guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis v. Casey,* 518 U.S. 343, 355 (1996). As the Supreme Court made clear in *Lewis,* the decision in *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance." *Id.* at 351. Instead, the State's obligation is limited to providing those tools "that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355.

To state a valid claim based on the denial of access to courts, an inmate must show an "unconstitutional burden on his right of access to the courts" resulting in "actual injury" to "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *O'Dell v. Netherland,* 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis,* 518 U.S. at 355); *also Mohammed v. Daniels,* No. 5:13-CT-3077-FL,

15

2016 WL 4544017, at *16 (E.D.N.C. Aug. 31, 2016) (quoting *Lewis,* 518 U.S. at 354) ("The right to access the courts extends to direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions of confinement," but not to the right to "litigate effectively once in court."). In addition, the inmate must demonstrate that the claim lost was not frivolous. "Conclusory allegations are not sufficient in this regard." *Sewell v. Shearin,* No. CV DKC-15-3040, 2016 WL 6525615, at *16 (D. Md. Nov. 2, 2016).

Cruse alleges that his inability to effectively access legal services and indigent mail supplies caused him to lose his right to a jury trial in an eviction proceeding. As a result, the matter was heard by a county magistrate, who ruled in favor of the landlord and evicted Cruse. Cruse implies, but does not affirmatively state, that the result would have been different if the case had been heard by a jury. Cruse does not provide the Court with the magistrate's rationale for granting eviction, nor does he supply documentation from the eviction hearing that would allow the Court to ascertain the factual and legal basis for the decision. Consequently, given the record before the Court, Cruse fails to state a valid claim for denial of access to the courts. An eviction proceeding is not the type of legal action to which the constitutional protection extends. *See, e.g., Boyd v. Austin*, No. CIV.A.05-10873-RWZ, 2006 WL 581097, at *3 (D. Mass. Mar. 3, 2006) ("To the extent that plaintiff is claiming that he was hindered in defending against an eviction action, unrelated to his criminal conviction or the conditions of his confinement, any such impairment is not a cognizable injury under *Lewis. See* 518 U.S. at 355."). Furthermore, Cruse fails to demonstrate that: (1) the defendants' actions hindered him from presenting a defense to the eviction notice, and (2) his defense to the action was not frivolous. 'The right of access to the courts is 'ancillary to the underlying claim,

without which a plaintiff cannot have suffered injury by being shut out of court.'" *Carter-El v. Gelsinger,* No. Civ.A. JFM-14-2264, 2015 WL 1321387, at *7 (D. Md. Mar. 23, 2105) (quoting *Christopher v. Harbury,* 536 U.S. 403, 415 (2002). Assuming for argument's sake alone that the eviction proceeding did trigger a constitutional protection against the denial of meaningful access to the court, Cruse's allegations simply do not contain enough detail about the merits of his defense for the Court to determine whether he "lost an opportunity to present a meritorious [case]." *Sewell,* 2016 WL 6525615, at *16.  Even though Cruse allegedly paid his rent, many reasons exist, other than the nonpayment of rent, that would justify an order of eviction. Cruse's unsupported suggestion that the outcome of the proceeding would have been different if not for the WRJ's lack of supplies and assistance is speculative at best.

For these reasons, the undersigned **FINDS** that Cruse also fails to state a valid constitutional claim for denial of access to courts.

## III.   <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the United States District Judge accept and adopt the findings herein and **RECOMMENDS** that Plaintiff's Motion to Amend the Complaint be **DENIED**; Defendants' Motion for Summary Judgment be **GRANTED**; and this action be **DISMISSED**, with prejudice, and removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the

date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, Defendants, counsel of record, and any unrepresented party.

**FILED:**  December 20, 2016

Cheryl A. Eifert
United States Magistrate Judge

18